**Larry HOLMBERG; Amusement Center, Inc., a Minnesota corporation, Appellants,**

**v.**

**CITY OF RAMSEY, a municipal corporation, Appellee.**

No. 92–3897.

United States Court of Appeals, Eighth Circuit.

Submitted March 18, 1993.

Decided Dec. 30, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Feb. 10, 1994.

Randall D.B. Tigue, Minneapolis, MN, argued, for appellants.

James J. Thompson, Minneapolis, MN, argued, for appellee.

Before FAGG, MAGILL, and HANSEN, Circuit Judges.

FAGG, Circuit Judge.

Larry Holmberg owns and operates an adults-only business that deals in sexually explicit materials protected under the First Amendment. Holmberg brought this action against the City of Ramsey challenging the constitutionality of the City's zoning ordinance, which requires Holmberg to relocate his business because the business is located within 1000 feet of a day-care center, a church, a bowling alley that serves liquor, and residential property. Following a trial, the district court upheld the ordinance. *Schneider v. City of Ramsey*, 800 F.Supp. 815 (D.Minn.1992). Holmberg appeals and we affirm.

On April 19, 1990, Holmberg opened his business on property he owned near Highway 10, the main commercial road through the City. Although Holmberg's business does not have direct access to Highway 10, the business is visible from the highway.

Holmberg sells adults-only books and magazines and sexual novelties. Holmberg also provides coin-operated machines for viewing adults-only movies on the premises. Because Holmberg's business was the first of its kind in the City and the City had no ordinance dealing with sexually oriented businesses, the Ramsey City Council met to consider the advisability of amending its zoning ordinance. Having decided to study how these businesses affect their neighborhoods, the City Council passed an interim ordinance banning the operation of sexually oriented businesses until the study was completed. After Holmberg obtained a district court restraining order prohibiting the City from closing his business, the City Council lifted the interim ordinance's ban so Holmberg could operate his business. Although the City Council's initial action was constitutionally flawed, the district court made clear that the City Council passed the interim ordinance to foster an orderly study and to develop an appropriate zoning measure, rather than to suppress Holmberg's adults-only materials.

The City promptly hired a professional city planner to investigate the secondary effects of sexually oriented businesses and prepare a report for the City Council's consideration. The planner gathered and analyzed relevant neighborhood impact studies conducted by other cities located inside and outside of Minnesota. The planner also examined a variety of relevant reports, including a Minnesota Attorney General's report about regulating these businesses. Based on the planner's report, recommendations by the city planning commission, and local public hearings, the City Council concluded that sexually oriented businesses like Holmberg's would produce negative secondary effects including increased crime, diminished property values, and general neighborhood blight in Ramsey. The City Council then amended the City's zoning ordinance to include provisions aimed at minimizing the unwanted secondary effects of sexually oriented businesses.

As amended, the zoning ordinance designates two commercial zones in which sexually oriented businesses may operate. Within these zones, sexually oriented businesses must be located at least 1000 feet from residentially zoned property, day-care centers, educational facilities, public libraries, public parks, other sexually oriented businesses, on-sale liquor establishments, and churches. Although Holmberg's business is located within one of the newly-created zones, Holmberg's business is nonconforming because it is located within 1000 feet of a day-care center, a church, a bowling alley that serves liquor, and residential property. Thus, under the zoning ordinance, Holmberg must relocate his business within a given grace period. Holmberg neither challenges the reasonableness of the grace period nor claims he is unable to recoup his investment within this period.

Relying on *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), the district court concluded Ramsey's zoning ordinance does not violate the First Amendment. The district court found the City reasonably relied on other cities' relevant studies in concluding sexually oriented businesses will produce undesirable secondary effects in Ramsey, the City passed the zoning ordinance to diminish the unwanted secondary effects, and the ordinance gives sexually oriented businesses like Holmberg's a reasonable opportunity to operate in the City. Having reviewed the record, we conclude these findings are not clearly erroneous.

We agree with the district court that Holmberg's case is largely controlled by *Renton*. Because the City's zoning ordinance limits the location of sexually oriented businesses rather than banning them altogether, the ordinance is analyzed as a form of time, place, and manner regulation of protected speech. *Id.* at 46, 106 S.Ct. at 928. Regulations of this kind withstand First Amendment attack provided the regulations are content-neutral, are designed to serve a substantial governmental interest, and do not unreasonably limit alternative avenues of communication. *Id.* at 47, 106 S.Ct. at 928.

Initially, Holmberg contends Ramsey's zoning ordinance is not content-neutral. To decide this issue, we must consider the City's purpose in passing the ordinance.

*Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989). If the City's ordinance serves a purpose unrelated to the expressive content of the sexually oriented businesses the City wants to regulate, the ordinance is deemed neutral, even though the ordinance may affect those businesses incidentally. *Id.* Here, the ordinance's stated purpose is to lessen the undesirable secondary effects sexually oriented businesses have on surrounding neighborhoods, make these businesses less accessible to minors, prevent losses in property values, and reduce criminal activity. Like the district court, we find nothing in the ordinance that suggests the City Council passed the ordinance to suppress the message of Holmberg's sexual materials, rather than to limit the choice of locations for businesses like his. Thus, the ordinance, justified without reference to the content of the regulated speech, is content-neutral. *Id.*

█ Notwithstanding the ordinance's clearly stated purpose, Holmberg contends the circumstances that led to the enactment of the zoning ordinance show the City's concern with secondary effects is a pretext masking the City's real purpose to censor his sexually oriented business's protected speech. Holmberg's contention flies in the face of the district court's findings. *See* 800 F.Supp. at 821–23. Fortified by compelling support in the record, the district court's finding that the City Council passed the zoning ordinance to diminish sexually oriented businesses' secondary effects "is more than adequate to establish that the [C]ity's pursuit of its zoning interests here was unrelated to the suppression of free expression." *Renton,* 475 U.S. at 48, 106 S.Ct. at 929.

█ Next, Holmberg contends the City failed to establish that its ordinance serves a substantial governmental interest. Holmberg argues the City cannot support its claim that sexually oriented businesses cause undesirable secondary effects because the City produced no evidence that his business increased crime, lowered property values, or jeopardized minors' well-being. We agree with Holmberg that it is not enough for the City merely to give lip service to a legitimate governmental interest. The City also has the burden to substantiate its declaration that zoning regulations are needed to curb unwanted secondary effects of sexually oriented businesses that operate in Ramsey. *See Cornerstone Bible Church v. City of Hastings,* 948 F.2d 464, 469 (8th Cir.1991). Although a city can establish its substantial interest by showing that sexually oriented businesses are actually causing secondary effects, *see SDJ, Inc. v. City of Houston,* 837 F.2d 1268, 1274 (5th Cir.1988), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989), a city can also satisfy its burden by compiling a record of other cities' experiences with sexually oriented businesses that the city reasonably believes to be relevant to the city's problem, *see id.* (citing *Renton,* 475 U.S. at 50–52, 106 S.Ct. at 930); *International Food & Beverage Sys. v. City of Fort Lauderdale,* 794 F.2d 1520, 1526–27 (11th Cir.1986). Here, the City passed its zoning ordinance relying on other cities' studies showing that sexually oriented businesses have an adverse impact on surrounding neighborhoods. Because the City reasonably believed the studies were relevant to the problems in Ramsey, the City satisfied its burden. *See Renton,* 475 U.S. at 51–52, 106 S.Ct. at 931.

█ In a related argument, Holmberg contends the face of the ordinance "plainly reflects an intent to censor on the basis of content, rather than [a] concern over secondary effects" because the ordinance treats his nonconforming sexually oriented business differently from other nonconforming uses in the city. Holmberg points out correctly that the ordinance permits nonconforming uses that do not deal in sexually explicit materials to remain in their current locations until the City produces "documented stud[ies] and evidence" showing adverse secondary effects. Conversely, Holmberg contends the ordinance mandates that his nonconforming business must relocate without requiring the City to make a similar showing. Holmberg's argument that the ordinance relieves the City of the burden to establish its substantial interest in the ordinance's provisions targeting the secondary effects of sexually oriented businesses is legally frivolous. In our view, Holmberg simply ignores the district court's

144

findings that the City enacted the ordinance on the strength of thorough research, public hearings, documented studies, and considered deliberations, and stubbornly argues the City must document its substantial interest with localized studies and evidence showing that secondary effects actually exist. Under the First Amendment, the City was not required "to conduct new studies or produce evidence independent of that already generated by other cities" before enacting an ordinance that lessens sexually oriented businesses' secondary effects. *Renton*, 475 U.S. at 51, 106 S.Ct. at 931. When the ordinance was passed, the City Council had reliable evidence before it that businesses like Holmberg's produce undesirable side effects. Thus, the ordinance's provisions requiring Holmberg to relocate his business represented a legitimate governmental response to a substantial interest, not content-based regulation.

■ Holmberg also contends the ordinance denies him a reasonable opportunity to operate a sexually oriented business in Ramsey. Under the ordinance, sexually oriented businesses have access to 35% of the City's land zoned for commercial uses, which includes both developed and undeveloped land. Much of the available land is located along major streets that intersect Highway 10 and, like Holmberg's current location, the land is within sight of the highway. Nevertheless, Holmberg contends the cost of relocating on this land effectively puts him out of business. The First Amendment is not violated, however, merely because Holmberg must "fend for [himself] in the real estate market, on an equal footing with other prospective purchasers and lessees." *Id.* at 54, 106 S.Ct. at 932. We agree with the district court that the land available to Holmberg under the ordinance puts him on equal footing with other businesses considering locating in Ramsey. *See* 800 F.Supp. at 822–23. Because the ordinance provides Holmberg with potential relocation sites in accessible commercially zoned areas, we conclude the ordinance does not unreasonably limit alternative avenues of communication. *See Alexander v. City of Minneapolis*, 928 F.2d 278, 283–84 (8th Cir. 1991).

■ Additionally, Holmberg contends the ordinance gives the City unbridled discretion to deny his requests to subdivide a larger tract of land and construct a building for his business on one of the smaller lots. Because Holmberg would use the subdivided land for a sexually oriented business, Holmberg believes the planning commission and City Council would deny his subdivision requests based on language in the ordinance permitting them to consider "the best use of the land." The City strenuously disagrees. As the City reads the ordinance, sexually oriented businesses can locate anywhere within the authorized commercial zones, provided the location is at least 1000 feet from the protected uses. The City thus concedes that it could not use the challenged language to deny Holmberg's request to subdivide a larger tract of land because Holmberg would relocate his sexually oriented business on the subdivided land. We conclude the City's interpretation alleviates Holmberg's concern. *See Ward*, 491 U.S. at 795–96, 109 S.Ct. at 2756.

Finally, Holmberg contends the ordinance violates his equal protection rights because it treats sexually oriented businesses differently than other nonconforming uses that do not deal in sexually oriented materials. Holmberg bases his contention on the same reasons he advances in support of his First Amendment challenge. We believe our earlier discussion rejecting Holmberg's First Amendment challenge also forecloses Holmberg's equal protection contention. *See Renton*, 475 U.S. at 55 n. 4, 106 S.Ct. at 933 n. 4.

In our view, Ramsey's zoning ordinance is content-neutral, the City has shown the existence of a substantial governmental interest to support its ordinance, and the ordinance is narrowly-tailored to achieve the City's substantial interest. The zoning ordinance utilizes separation restrictions to accomplish the City's stated goal of protecting the quality of life in the community, while at the same time makes some areas of the City available for sexually oriented businesses and their patrons. In sum, Ramsey's zoning ordinance comes to grips with undesirable secondary effects of sexually oriented businesses in a way that satisfies the requirements of the

First and Fourteenth Amendments. Having carefully considered all of Holmberg's contentions, we affirm the district court.