# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-3017

_____

Dale Owen Peterson; The Juice Bar, LLC, a Minnesota limited liability company

*Plaintiffs - Appellants*

v.

City of Florence, Minnesota, a Municipal corporation

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: June 12, 2013
Filed: August 16, 2013
[Published]

_____

Before LOKEN, BRIGHT, and BYE, Circuit Judges.

_____

PER CURIAM.

Appellants Dale Peterson and The Juice Bar, LLC, an adult entertainment establishment operated by Peterson, filed suit against the City of Florence ("Florence") alleging Florence's zoning scheme violated the First and Fourteenth

Amendments.[1]  The district court[2] granted summary judgment in favor of Florence, concluding the zoning scheme is a valid content-neutral, time, place and manner regulation.  We affirm.

Florence is located within Lyon County, Minnesota.  It has a population of 39 and is approximately .2 of a square mile.  Florence contains sixteen single-family residences, a small shop used to store Florence's equipment, an unheated metal building operating as Florence's office, and a park.

In 2008, Florence adopted Ordinance Nos. 2008-03 and 2008-02.  Ordinance No. 2008-03 prohibited the operation of a "sexually-oriented business" within 250 feet of any property zoned for residential use, as well as day cares, schools, parks, and libraries.  It also restricted such businesses to locations zoned "C-2."  Ordinance No. 2008-02 defines three zoning classifications:  (1) "R-1 Single-Family Residential District;" (2) "B-1 Business District;" and (3) "C-2 Commercial District."  The ordinance also zoned all areas within Florence as "R-1."

Peterson opened The Juice Bar in December 2010, which featured live, nude dancers.  One day after opening, law enforcement cited Peterson for operating a "sexually-oriented business" within 250 feet of a park.  Under threat of arrest, Peterson closed The Juice Bar.  Peterson was charged with three misdemeanor violations of Ordinance No. 2008-03.  Peterson notified the prosecutor of his plan to file suit to enjoin Florence from enforcing the zoning ordinance against sexually-

---

[1]"Freedom of speech . . . [is] protected by the First Amendment from infringement by Congress, [and is] among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by state action." *Lovell v. City of Griffin*, 303 U.S. 444, 450 (1938).

[2]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

oriented businesses.  The prosecutor agreed to a continuance in the criminal case against Peterson pending resolution of the lawsuit.[3]

Peterson and The Juice Bar filed suit against Florence, seeking declaratory relief, injunctive relief, damages, and attorney's fees and costs.  Shortly thereafter, Florence enacted Ordinance No. 2011-09, which repealed Ordinance No. 2008-03 in its entirety.  Ordinance 2011-09 states, in relevant part, that Florence "desires to maintain [itself] solely as a residential community" due to its "limited infrastructure, staff, and resources," which could not support business and commercial uses. Florence then enacted Ordinance No. 2011-02 which repealed the sections of Ordinance No. 2008-02 that established the "B-1" and "C-2" zoning classifications.

The district court granted Florence's motion for summary judgment and dismissed the suit with prejudice.  The district court first concluded that because the zoning ordinances are not aimed directly at sexually-oriented businesses, they are content-neutral and therefore subject to time, place and manner analysis.  The district court then found the zoning ordinances are narrowly tailored to serve a significant governmental interest because they are "aimed at preserving the residential nature and quality of life of Florence's citizens." *Peterson v. City of Florence*, 884 F. Supp. 2d 887, 893 (D. Minn. 2012).  The district court further found that "[Florence] has in no way denied Plaintiffs a reasonable opportunity to open and operate an adult use business elsewhere in Lyon County." *Id.* at 894.  Consequently, the district court concluded that Florence's zoning ordinances were a valid time, place, and manner regulation.  This appeal followed.

---

[3]The parties stated at oral argument that the criminal case against Peterson case has now been dismissed.

This court reviews a grant of summary judgment de novo. *Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court must view the record "in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *Chambers*, 641 F.3d at 904 (citation omitted).

Peterson makes several arguments on appeal, which we summarize. Peterson contends the zoning ordinances[4] constitute an invalid total ban on the operation of adult entertainment businesses in Florence. Alternatively, Peterson contends the zoning ordinances are content-based and thus subject to strict scrutiny, or lastly, the zoning ordinances constitute an invalid time, place, and manner regulation which fails intermediate scrutiny. We address Peterson's arguments in turn.

"The First Amendment generally prevents government from proscribing speech or even expressive conduct because of disapproval of the ideas expressed." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992) (internal citations omitted). A content-based regulation restricts speech because of its expressive content. *See Turner Broad. Sys., Inc. v. FCC.*, 512 U.S. 622, 643 (1994). A content-neutral regulation is "justified without reference to the content of the regulated speech." *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48 (1986). "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against* Racism, 491 U.S. 781, 791 (1989). A content-based regulation must satisfy strict scrutiny, *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000), and is

---

[4]Because Florence repealed Ordinance No. 2008-03, the anti-blight ordinance aimed directly at "sexually-oriented businesses," with the adoption of Ordinance No. 2011-09, we do not address Ordinance No. 2008-03.

presumptively invalid, *R.A.V.*, 505 U.S. at 382. A content-neutral regulation is subject to intermediate scrutiny. *Turner Broad. Sys.*, 512 U.S. at 642.

By zoning the city entirely residential, Florence effectively prohibited an entire class of conduct—all commercial and business uses—not just conduct pertaining to adult entertainment. The zoning ordinances at issue do not target adult entertainment and its expressive content. To the extent Peterson contends the zoning ordinances affect only his business and no others, he merely identifies the kinds of "incidental effects" which the Supreme Court and this court have found permissible. *Ward*, 491 U.S. at 791; *Holmberg v. City of Ramsey*, 12 F.3d 140, 143 (8th Cir. 1993) ("If the City's ordinance serves a purpose unrelated to the expressive content of the sexually oriented businesses the City wants to regulate, the ordinance is deemed neutral, even though the ordinance may affect those businesses incidentally."). Contrary to Peterson's contention, the zoning ordinances do not constitute an invalid total ban on adult entertainment businesses nor are they content-based. Rather, the zoning ordinances constitute content-neutral regulations subject to intermediate scrutiny.

A content-neutral time, place, or manner regulation will be upheld if it is narrowly tailored to serve a substantial governmental interest and leaves open ample alternative channels for communicating the speech. *Ward*, 491 at 791. An ordinance is narrowly tailored if it "'promotes a substantial interest that would be achieved less effectively absent the regulation' and the means chosen does not 'burden substantially more speech than is necessary to further' the city's content-neutral interest." *Excalibur Grp., Inc. v. City of Minneapolis*, 116 F.3d 1216, 1221 (8th Cir. 1997) (quoting *Ward*, 491 U.S. at 799).

Florence has articulated substantial interests. As stated, Ordinance No. 2008-02 was enacted, among other things, "to ensure public health, safety and general welfare . . . to improve the quality of the physical environment of the city; to protect and maintain property values, and to preserve and develop the economic base of the

-5-

city." The Supreme Court has instructed us not to take these asserted interests lightly. *See Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 71 (1976) ("[T]he city's interest in attempting to preserve the quality of urban life is one that must be accorded high respect."). Further, Ordinance Nos. 2011-09 and 2011-02 state that Florence's limited infrastructure, staff, and resources restrict its ability to accommodate commercial or business establishments. Given Florence's small size and population, its desired interest would be achieved less effectively absent the regulation. Any incidental burden on speech from the zoning scheme is therefore no greater than necessary to furthering the interest in keeping Florence residential. As such, the zoning scheme is narrowly tailored to serve a substantial government interest.

Finally, we conclude that there exists a reasonable alternative avenue in which Peterson may operate an adult entertainment business despite the zoning ordinances. The Supreme Court has left open the question whether, at least in the case of small municipalities, opportunities to engage in the restricted speech in neighboring communities may be relevant to determining the existence of adequate alternative channels. *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 76–77 (1981); *see Int'l Eateries of Am., Inc. v. Broward County,* 941 F.2d 1157, 1165 (11th Cir. 1991) (looking to the availability of other areas in the county for the operation of adult entertainment businesses to determine whether reasonable alternative avenues of communication exist), *cert. denied,* 503 U.S. 920 (1992); *Keego Harbor Co. v. City of Keego Harbor,* 657 F.2d 94, 98 (6th Cir. 1981) ("It might be that the First Amendment burden would be rendered incidental if, for example, county-wide zoning were present to ensure that there were reasonable access to the protected activity in nearby areas.")

While Peterson contests the validity of the zoning ordinance in Lyon County and the exact acreage which is zoned for adult entertainment uses, he does not dispute that there exist areas within the county for such use. Peterson's own expert, Bruce McLaughlin, states that 204.26 (or 32.22%) of the total acres zoned for commercial

use in Lyon County are available for adult entertainment uses. This availability would provide Peterson with a reasonable alternative for operating an adult entertainment business in the county. *See Alexander v. City of Minneapolis*, 928 F.2d 278 (8th Cir. 1991) (concluding an ordinance that permitted access to at least 6.6% of the total acreage of commercial land left open reasonable alternative avenues for communication). Accordingly, the zoning ordinances in question do not violate Peterson's constitutional rights relating to the operation of his adult entertainment business.

We affirm.

_____